**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **U.S. EQUAL EMPLOYMENT** | * |
| **OPPORTUNITY COMMISSION**, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Case No. 05cv0287 RWT |
| | * |
| **LOCKHEED MARTIN CORPORATION**, | * |
| | * |
| Defendant. | * |
| | ******* |

**MEMORANDUM OPINION**

The U.S. Equal Employment Opportunity Commission ("EEOC") brings this action to challenge certain conduct of Lockheed Martin Corporation in the wake of its merger with COMSAT Corporation in 2000. The action involves two unrelated sets of claims, only one of which is at issue in the instant motions. At issue are claims under the Age Discrimination in Employment Act, the Equal Pay Act of 1963, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, and Title I of the Civil Rights Act of 1991, alleging that Lockheed unlawfully retaliated against a former COMSAT employee, Denise Isaac, by denying her severance benefits after she had been laid off as a result of the merger and had filed a charge of discrimination with the EEOC.[1]

Lockheed now moves to dismiss the retaliation claims pertaining to Ms. Isaac pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively for summary judgment. Paper No. 13. The EEOC cross-moves for summary judgment. Paper No. 20. For the reasons that follow, this Court holds that the

---

[1]The EEOC brings additional claims against Lockheed Martin, not at issue here, that allege substantive age discrimination against Jeffrey Kurland and other "similarly situated individuals." Paper No. 1, ¶¶ 22–26. The parties chose not to address these other claims at this early stage of the litigation, but retain the right to file dispositive motions regarding these claims on or before the dispositive motions deadline, presently set for January 7, 2007. *See* Paper No. 45 (Order of May 31, 2006, extending the scheduling order).

EEOC is entitled to summary judgment in its favor, and will, by separate order, grant the EEOC's motion and deny Lockheed's motion.

I

Denise Isaac had been an employee of COMSAT Corporation for over twenty years when she was laid off as a result of COMSAT's merger into a Lockheed Martin subsidiary, Lockheed Martin Global Telecommunications. On October 16, 2000, Lockheed sent Ms. Isaac a letter informing her that her position would be eliminated effective October 30, 2000. Mot. exh. 6.[2] The letter also informed Isaac that she would receive severance benefits under the COMSAT Corporation Salary Continuation Plan, but only "in exchange for" signing a Release of Claims form that was attached to the letter. *Id.*

The release provided, in relevant part:

> **Claims not Released.** By this agreement, I am not releasing claims for benefits I may have under the Corporation's other benefit plans (such as the pension plan), any rights to benefits under applicable workers' compensation statutes or government-provided unemployment benefits, or any rights to enforce this Release.
>
> **Claims Released.** Subject only to the exclusions noted in the previous paragraph, I agree to waive and fully release any and all claims of any nature whatsoever (known and unknown), promises, causes of action or similar rights of any type ("Claims") that I may now have or have had with respect to any of the Released Parties listed below. These Claims released include, but are not limited to, claims that in any way relate to my wages, bonuses, commissions, unused sick pay; any claims to severance or other benefits; any claims to expenses, attorneys' fees or other indemnities; or claims for other personal remedies or damages sought in any legal proceeding or charge filed with any court, federal, state, or local agency either by me or by a person claiming to act on my behalf or in my interest.

---

[2] Throughout this opinion, "Mot." refers to Lockheed's motion, Paper No. 13; "Cross-mot." refers to the EEOC's opposition and cross-motion, Paper No. 20; "Repl." refers to Lockheed's reply to the EEOC's opposition and opposition to the EEOC's cross-motion, Paper No. 27; and "Cross-repl." refers to the EEOC's reply to Lockheed's opposition, Paper No. 29.

> . . . . I specifically, but without limitation, agree to release all of the Released Parties under the following:
> *Antidiscrimination laws*, such as Title VII of the Civil Rights Act of 1964, . . . the Age Discrimination in Employment Act, . . . or any other local, state, or federal statutes prohibiting discrimination . . . .

*Id.* (emphasis in original). The release further provided that

> [t]he parties agree that this Release prohibits my ability to pursue any Claims or charges against the Released Parties seeking monetary relief or other remedies for myself and/or as a representative on behalf of others. This agreement does not affect my ability to cooperate with any future ethics, legal or other investigations, whether conducted by the Corporation or any governmental agencies.

*Id.*

Isaac declined to sign the release. Instead, on October 27, 2000, she filed a charge with the EEOC, alleging that her termination was discriminatory on the basis of race, gender, and age. Mot. exh. 3.

On November 2, 2000, through counsel, she sent Lockheed a letter asserting that notwithstanding the charge, she had the right to receive severance benefits, and that the release was retaliatory as written. Cross-mot. exh. 2. Lockheed responded by letter on November 20, 2000, stating that it "would not amend the Release of Claims form in any way." Cross-mot. exh. 3. The response also stated that

> If Ms. Isaac decides to sign the release as is and receive severance benefits, she will have to dismiss her EEOC charge against the company. We will give her until the close of business on Friday, December 1, 2000, to consider the release. If she does not sign by then, she will be terminated from employment and cease to be paid as of that date, and will forfeit any opportunity to receive severance benefits from the company.

*Id.*

Isaac never signed the release. She was terminated effective December 1, 2000, and never

3

received any severance benefits. The EEOC filed this action on her behalf on January 31, 2005.[3]

II

A

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff"; the motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Under Federal Rule of Civil Procedure 56, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "A material fact is one that 'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

With respect to the instant claims, there are no disputed material facts; the chronology outlined above is undisputed and well supported by documentation submitted with the pleadings.

---

[3] Lockheed argues that the EEOC "failed to offer Lockheed an opportunity to conciliate" before filing suit, and that this constitutes "a separate basis for dismissal of the EEOC's claims on Ms. Isaac's behalf." Mot. at 4–5 n.3. However, the EEOC *did* offer Lockheed an opportunity to conciliate in its letter of July 31, 2002, *see* Cross-mot. exh. 5, so the argument is unavailing.

Thus, the outcome can be decided as a matter of law; the question is the application of the civil rights laws to the instant facts.

B

The charge that Isaac filed with the EEOC arose under several different antidiscrimination statutes, but all of them have similar antiretaliation provisions. *See, e.g.*, *EEOC v. SunDance Rehabilitation Corp.*, 328 F. Supp. 2d 826 (N.D. Ohio 2004). For instance, the Age Discrimination in Employment Act provides that

> [i]t shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). Similarly, Title VII provides that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). These provisions forbid not the "substantive" discrimination on the basis of age, race, gender, etc., that are the subject of the civil rights laws generally, but "discrimination against employees who pursue their federal rights" under those laws—in other words, retaliation against employees who, for example, file an EEOC charge. *EEOC v. Bd. of Governors of State Colleges and Univs.*, 957 F.2d 424 (7th Cir. 1992).

III

The EEOC alleges that Lockheed's actions unlawfully interfered with Isaac's protected activity in two respects. First, it argues that Lockheed's conditioning of Isaac's severance benefits on the withdrawal of her EEOC charge—whether or not she was otherwise entitled to those benefits

5

before she filed the charge—constituted retaliation. Second, it argues that the release itself prohibits the signor from filing an EEOC charge, and that it is thus facially retaliatory. The EEOC is correct in both respects, so each of these theories provides an independent ground upon which it must prevail.

A

To demonstrate retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) an action is taken against her "that a reasonable employee would have found . . . materially adverse"; and (3) that action had a causal connection to the protected activity.[4] *See Burlington N. & Santa Fe Ry. Co. v. White*, No. 05-269 (U.S. June 22, 2006), slip op. at. 13; *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003). As discussed above, filing an EEOC charge is

---

[4] At the time this case was briefed and argued, the prevailing standard in the Fourth Circuit held that a plaintiff must show not just an action "that a reasonable employee would have found . . . materially adverse," but an "adverse employment action," *i.e.*, an action that "'adversely affected' the 'terms, conditions, or benefits' of her employment." *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (quoting *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d 239, 243 (4th Cir. 1997)). Thus, a plaintiff was required to show that (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) the adverse employment action had a causal connection to the protected activity. *See Bryant*, 333 F.3d at 543.

Since then, the Supreme Court decided *Burlington Northern & Santa Fe Railway Co. v. White*, which held that, at least in the Title VII context, the previous Fourth Circuit standard was too narrow and "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co. v. White*, No. 05-269 (U.S. June 22, 2006), slip op. at 12. The standard enunciated here represents an effort to state the Fourth Circuit standard as modified by this new precedent.

However, the outcome in this case would be the same under the pre-*White* standard or under any plausible post-*White* modification. As will be discussed below, the actions taken against Ms. Isaac qualified as adverse employment actions under the pre-*White* standard in this circuit. Because *White* broadens and does not narrow the set of acts that can constitute retaliation, the adverse employment action taken against Ms. Isaac is also an action "that a reasonable employee would have found . . . materially adverse."

This Court therefore does not need to decide whether and to what extent *White* applies to the retaliation provisions of the antidiscrimination statutes other than Title VII, such as the ADEA, under which the EEOC also brings suit here.

a protected activity, and neither party disputes this. Moreover, denial of severance benefits is an adverse employment action, and therefore an action "that a reasonable employee would have found . . . materially adverse." *White*, slip op. at 13; *e.g.*, *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (finding an adverse employment action, as part of a prima facie case of disparate treatment, when one employee received a smaller severance package than another). The dispute thus centers on the third element. Lockheed advances three arguments as to why no materially adverse action resulted from Isaac's protected activity.

First, Lockheed argues, the timing was wrong: Isaac filed her EEOC charge after she had been presented with the release, so Lockheed's insistence that she sign the release and forfeit any rights to file a charge with the EEOC cannot have been retaliation for her protected activity. This argument, however, incorrectly identifies the adverse action. The retaliatory act was not presenting Isaac with the release—though as will be discussed, the release was itself facially retaliatory. Rather, the retaliatory act was denying her severance benefits.[5]

Lockheed's communications with Ms. Isaac show that it conditioned her receipt of severance benefits on her withdrawal of the EEOC charge. In its letter of November 20, 2000, Lockheed stated explicitly that "[i]f Ms. Isaac decides to sign the release as is and receive severance benefits, she will have to dismiss her EEOC charge against the company." Cross-mot. exh. 3. Lockheed sent this letter in response to Isaac's request that the terms of the release be modified and to her assertion that she was entitled to severance benefits "despite having a pending EEO charge[] against [Lockheed]."

---

[5] For similar reasons, neither the best evidence nor parol evidence rules bar consideration of Lockheed's letter of November 20, 2000, Lockheed's arguments notwithstanding. *See* Repl. at 11–12; Tr. (Paper No. 32) at 13, ll.16–18. The sending of the letter—containing a choice between maintaining an EEOC charge and collecting severance benefits—was the retaliatory act, not the presentation of the release on October 16, 2000.

7

Cross-mot. exh. 2. This exchange makes it clear that Lockheed did not deny Isaac severance benefits because of an abstract dispute about the wording of its release or because, for unprotected reasons, Isaac refused to sign it. Rather, Lockheed presented Isaac with a Hobson's Choice: she could withdraw her EEOC charge, or she could forfeit her severance benefits.

Lockheed's second argument is that this choice was legal because Isaac had no entitlement to severance benefits at all.[6] The severance benefit, in this view, was additional compensation that Lockheed offered in exchange for giving up a right. Unfortunately for Lockheed's argument, though, "[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984). Whether severance benefits are a right or a discretionary gift or anything in between is therefore irrelevant. Lockheed might well have been free to offer severance benefits to no one, but it cannot provide them only to employees who refrain from participating in protected activity. *See EEOC v. Bd. of Governors*, 957 F.2d at 430 (holding that even where an employer "had no obligation to provide its employees with a right to grievance procedures at all," it could not withhold them only from

---

[6] Lockheed makes this argument on the basis of the Lockheed-COMSAT merger documents. Lockheed's reliance on these documents is misplaced; it is a basic tenet of corporate law that in a merger, "[t]he successor is liable for all the debts and obligations of each nonsurviving corporation." Md. Code Ann., Corps. & Ass'ns § 3-114. Thus, the merger (no matter what its terms were) did not extinguish Lockheed's liability to Isaac under the COMSAT severance plan. Lockheed counters that COMSAT plan could be terminated at will, but it has offered no evidence that it actually was—a statement that Lockheed was not assuming an obligation does not constitute a termination. *See* Paper No. 33 (Supp. Br. by Lockheed), at 5 (arguing that a statement in the merger agreement that Lockheed "would not assume" the severance plan terminated it). But all this is academic, as the denial of severance benefits constituted retaliation even assuming, *arguendo*, that the conferral of severance benefits was entirely a matter of discretion.

employees who filed EEOC charges).  To do so is "to discriminate against [an] employee . . . because [s]he has made a charge" and is unlawful.  *See* 42 U.S.C. § 2000e-3(a).

Lockheed's final argument as to why its actions were not retaliatory is that there is a distinction between a waiver of a right to file an EEOC charge and a waiver of a right to collect damages; the latter, Lockheed argues, may be exacted in consideration for monetary compensation.  However, whatever the effect of Lockheed's release, *see infra*, Lockheed's letter of November 20 could hardly have been more explicit: "If Ms. Isaac decides to sign the release as is and receive severance benefits, *she will have to dismiss her EEOC charge against the company*."  Opp. exh. 3 (emphasis added).  Lockheed demanded the withdrawal of an EEOC charge if Isaac was to get severance benefits.  This was retaliatory, and the EEOC is accordingly entitled to summary judgment in its favor.[7]

B

The EEOC argues in the alternative that the release was facially retaliatory, and that it would therefore be entitled to summary judgment even if Lockheed had not so clearly presented her with a choice between severance benefits and an EEOC charge.  The EEOC is correct.

---

[7] The EEOC has proffered direct evidence of retaliation; therefore, the familiar burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), which permits a plaintiff to establish a rebuttable presumption that an employer's conduct was discriminatory, is inapposite.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").

If, however, the *McDonnell Douglas* approach applies, the EEOC has made out a prima facie case of retaliation, and the burden shifts to Lockheed to proffer a legitimate, nondiscriminatory reason for the adverse employment action alleged.  In this case, no legitimate, nondiscriminatory reason for the adverse employment action has been or can be alleged—Lockheed gave severance benefits to Isaac's coworkers, but not to her, because she had refused to sign the release and withdraw her EEOC charge.

Either way, the EEOC is entitled to summary judgment.

The question of whether and when a release can be facially retaliatory is one of first impression in the Fourth Circuit. However, the Supreme Court has held that an employment policy may be discriminatory, *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 124 (1985), and other courts have applied this precedent to cases like the one at bar, in which an employer requires an employee to contractually waive the right to file an EEOC charge in order to receive an employment benefit. *See EEOC v. Bd. of Governors*, 957 F.2d at 431 (holding that a collective bargaining agreement that prevented employees who filed EEOC charges from using an arbitrated grievance process was a prohibited discriminatory policy); *SunDance*, 328 F. Supp. 2d at 838 (holding that "the provision of [a separation agreement] conditioning severance payments on an employee agreeing not to file a charge with the EEOC is facially retaliatory in violation of the ADA, ADEA, EPA, and Title VII").

Lockheed argues that its release did not prohibit employees who signed it from filing a charge with the EEOC, and accordingly did not impinge on any protected activity. Rather, it argues, the release merely waived any right of an employee to recover monetary damages against Lockheed, including under the antidiscrimination laws, and in exchange offered severance benefits. *See* Mot. at 8–14. If the scope of the release were only what Lockheed alleges it was, it would probably not be facially retaliatory. Courts have distinguished between claims filed for monetary or other personal relief, the purpose of which is "the seeking of 'one's own' from another," and the filing of a charge with the EEOC, the main purpose of which is "to inform the EEOC of possible discrimination." *EEOC v. Cosmair*, 821 F.2d 1085, 1089 (5th Cir. 1987). The former may, "under

particular circumstances," be waived.[8]  *See, e.g.*, *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1044 (6th Cir. 1986) (en banc).

However, Lockheed's release goes farther.  By its terms, the release defines "Claims" as "claims of any nature whatsoever (known and unknown), promises, causes of action or similar rights of any time."  Mot. exh. 6.  This could hardly be broader language, and it encompasses all monetary and other personal rights that an employee might have against Lockheed.  Read in isolation, this provision might or might not encompass EEOC charges.  But the release does not bar only "Claims" by employees; it "prohibits [employees'] ability to pursue any Claims *or charges* against the Released Parties seeking monetary relief or other remedies for [them]sel[ves] and/or as a representative on behalf of others."  *Id.* (emphasis added).  This language distinguishes "charges" even from the expansive definition of "Claims," and it explicitly includes "other remedies . . . as a representative on behalf of others" rather than just "the seeking of 'one's own' from another." Indeed, there is little that "charges" seeking "other remedies" could comprise other than EEOC charges.  Furthermore, this interpretation is supported by Lockheed's own statements to Ms. Isaac that if she "decides to sign the release as is and receive severance benefits, she will have to dismiss her EEOC charge against the company."  Opp. exh. 3; *see supra* Part III.A.

Because this Court concludes that Lockheed's release includes EEOC charges within its scope, this case is indistinguishable from *EEOC v. SunDance*.  *SunDance* involved an employee who was offered a Separation Agreement that offered severance pay but required her to "not institute,

---

[8] This Court does not and need not decide whether Lockheed's release, to the extent it attempts to waive rights to monetary relief, complies with the requirements of all relevant laws and is enforceable.  *See, e.g.*, *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997) (discussing the stringent requirements for "knowing and voluntary" waivers of ADEA rights under the Older Workers Benefit Protection Act of 1990).

commence, prosecute or otherwise pursue any proceeding, action, complaint, claim, charge, or grievance against Company . . . in any administrative, judicial, or other forum whatsoever." 328 F. Supp. 2d at 829. The Lockheed language has the same relevant effect: signatories may not file EEOC charges. The district court in *SunDance* held that although "knowing and voluntary waivers" of discrimination claims are permitted by statute and case law, conditioning benefits on the waiver of a right to file an EEOC charge at all—as opposed to the right to file a lawsuit or collect monetary damages—interferes with the public interest in EEOC enforcement of the ADEA, and is impermissible. *See also* 1990 U.S.C.C.A.N. 1509, 1541 (Senate Report on the Older Workers' Benefit Protection Act, an amendment to the ADEA) (A waiver may not "be used to interfere with the employee's protected right to file a charge or to participate in an EEOC investigation or proceeding. . . . An employee may validly waive the right to recover in his own lawsuit as well as the right to recover in a suit brought by the Commission on his own behalf."). Thus, the court held, SunDance's release was facially retaliatory.

Notably, in its discussion of waiving claims versus barring charges, the *SunDance* court distinguished one of the two cases upon which Lockheed tries to rely: *Wastak v. Lehigh Valley Health Network*, 333 F.3d 120 (3d Cir. 2003). The same logic applies to the other principal case Lockheed cites, *Syverson v. IBM*, 2004 U.S. Dist. Lexis 27844 (N.D. Cal. 2004). Even leaving aside the claims/charges distinction, however, there is another important difference between these cases on the one hand, and *SunDance* and the instant case on the other: *Wastak* and *Syverson* both involved plaintiffs who did sign a waiver, and who subsequently attempted to get out from the release's terms. As a matter of logic and law, there is a difference between whether a contract that waives claims is enforceable, and whether offering that contract or conditioning benefits upon it

constitutes retaliation under the ADEA or Title VII. Neither *Wastak* nor *Syverson* involved a retaliation claim, because the plaintiffs got benefits and never faced an adverse employment action, but tried to bring discrimination suits later.[9]

In *SunDance*, even though the EEOC brought its case against SunDance only as a facial challenge, and admittedly could not make out a prima facie case of retaliation as to the affected employee in particular, the fact that the release was facially retaliatory entitled the EEOC to a permanent injunction against maintaining or enforcing the portion of the agreement that barred the filing of EEOC charges. *SunDance*, 328 F. Supp. 2d at 836–37, 839. Here, unlike in *SunDance*, the EEOC can make and has made a prima facie case of retaliation as to Ms. Isaac, but the reasoning of *SunDance* otherwise applies: as an alternative ground for liability, Lockheed's release is facially retaliatory, and the EEOC is entitled to summary judgment in its favor on this ground as well.

IV

For the foregoing reasons, the EEOC is entitled to summary judgment. Its motion will be granted by separate order, and Lockheed's will be denied. Because the parties have not argued or presented evidence as to the appropriate remedies, the Court will hold a telephone status conference to schedule further proceedings, which it will also set by separate order.

  8/8/06                                                    /s/
DATE                                                ROGER W. TITUS
                                              UNITED STATES DISTRICT JUDGE

---

[9] Both *Wastak* and *Syverson* were decided prior to the Supreme Court's decision in *Burlington N. & Santa Fe Ry. Co. v. White*, which overruled the holdings of several circuits that an employee must show an "adverse employment action," and instead held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *White*, No. 05-269 (U.S. June 22, 2006), slip op. at. 13; *see supra* Part III.A & n.3.