**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | * | |
| **OPPORTUNITY COMMISSION** | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. RWT 05-287 |
| **LOCKHEED MARTIN GLOBAL** | * | |
| **TELECOMMUNICATIONS, INC.** | * | |
| Defendant | * | |

**MEMORANDUM OPINION**

On January 31, 2005, the U.S. Equal Employment Opportunity Commission ("the EEOC") filed suit against Lockheed Martin Global Telecommunications, Inc. ("LMGT") on behalf of Jeffrey Kurland ("Kurland") and other former LMGT employees, alleging a violation of the Age Discrimination in Employment Act ("ADEA").[1] On February 23, 2007, LMGT filed a motion for summary judgment on the grounds of laches and a failure to conciliate [Paper No. 118].[2] The Court held a hearing on this motion on June 18, 2007, and now rules.

**I.**

On or about August 3, 2000, Lockheed Martin Corporation ("Lockheed") acquired COMSAT Corporation ("COMSAT") by merging it into its subsidiary, LMGT. Jeffrey Kurland and the other claimants were employed in the COMSAT Mobile Communications ("CMC") business

---

[1] In its Complaint, the EEOC also alleged that LMGT improperly retaliated against another employee, Denise Lawson Isaac, for filing an EEOC charge. On August 9, 2006, this Court granted summary judgment as to liability in favor of the EEOC on this claim. *See* Paper Nos. 48, 49.

[2] LMGT, with the Court's permission, filed a second motion for summary judgment on the merits, which is still pending.

unit.[3] Following the merger, Lockheed decided to sell CMC and instituted a series of Reductions in Force ("RIF") to prepare for the sale of CMC. Jeffrey Kurland and the other claimants were included in the RIF, and their employment was terminated in October 2000.

On October 31, 2000, Jeffrey Kurland filed an EEO charge, alleging age discrimination in his termination.[4] The EEOC sent notice of the charge to LMGT on November 2, 2000. An EEOC investigator, Christie Boyd ("Boyd'), reviewed numerous personnel documents, interviewed Kurland and other persons in LMGT's employ, and completed an on-site investigation at the LMGT premises. Finally, on April 24, 2002, Boyd sent a Letter of Determination to LMGT, finding reasonable cause to believe that Kurland "and a class of older workers (age 40 and older) were selected for position abolishment and permanent layoff because of their age, in violation of the Age Discrimination in Employment Act of 1967." LMGT's Motion for Summary Judgment ("MSJ"), App. 3.

On May 16, 2002, Boyd sent a letter to LMGT's counsel, requesting back pay and liquidated damages for Kurland, reinstatement of his employment, and various equitable remedies. The letter did not mention by name any of the other claimants involved in the current suit. After some correspondence relating to back pay and damages, LMGT's counsel sent a letter to the EEOC on June 27, 2002, asserting that there was no reasonable cause for finding LMGT violated the ADEA, and stating that LMGT would not enter into a Conciliation Agreement. In a letter dated July 26, 2002, the EEOC responded that conciliation efforts had failed, and informed LMGT that the case

---

[3] The other claimants include Robert C. Baxter, Herman J. Molzahn, Bruce Nachman, Gerald M. Nagler, Klaus Neumann, Wayne E. Rentfro, and Edward R. Slack.

[4] In his initial charge, Kurland also claimed that he was not promoted because of his age. The EEOC, however, found this claim was without merit, and it is not before the Court.

would be referred to the EEOC's legal unit to determine whether a civil action should be filed in federal district court.

On September 30, 2002, the Baltimore Regional Attorney submitted a litigation recommendation to the Office of General Counsel in Washington, D.C. After evaluating possible policy considerations, the Office of General Counsel submitted its litigation recommendation to the full Commission in early April 2003. The Commission, however, did not vote on the litigation recommendation, electing instead to place the case in "agenda status."[5]

As a result of the Commission's decision, the Assistant General Counsel asked the Baltimore Regional Attorney on May 30, 2003, to reassess the file, and conduct a further inquiry into the case. Nearly a year later, the Baltimore Regional Attorney submitted additional information to the Office of General Counsel.[6] The General Counsel ultimately submitted his litigation recommendation to the Commission on November 29, 2004. Finally, on December 9, 2004, the Commission voted to approve the litigation. The Baltimore unit finally filed the complaint in this case on January 31, 2005, over four years after the RIF.

At no point during this process did the EEOC contact LMGT to update it on the status of the case. By the same token, LMGT does not claim that it contacted the EEOC to inquire as to the case's status.

---

[5] It appears that the designation "agenda status" delays a vote by the Commission on the litigation recommendation. The Commission apparently took this action when the Office of General Counsel could not answer certain questions posed regarding the evidence and legal theories of the case.

[6] The EEOC asserts that this delay was, in part, caused by a heavy workload; active litigation, with court-established deadlines, were given priority

**II**.

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). Summary judgment is only proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "A material fact is one that 'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To avoid summary judgment, the non-moving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

**III.**

Laches is an equitable doctrine, which requires a party to demonstrate that it was prejudiced by the opposing party's lack of diligence. *See EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 409 (4th Cir. 2005).[7] While this Court concludes that the EEOC exhibited a lack of diligence in bringing this action, LMGT has failed to demonstrate that it was significantly prejudiced by the EEOC's delay; thus, laches is not a bar to recovery.

---

[7] At the outset, the EEOC argues that the equitable defense of laches should not apply to the EEOC, an agency acting on behalf of the sovereign. The Court does not find this argument persuasive. In *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355 (1977), the Supreme Court noted that in cases of an inordinate delay by the EEOC, federal courts have the same discretionary power "to locate a just result in light of the circumstances peculiar to the case" as in other cases. *Id*. at 373 (internal citations and quotations omitted).

**A. Lack of Diligence**

In a laches determination, a lack of diligence exists where the plaintiff delayed inexcusably or unreasonably in filing suit. *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). No particular period of delay by the EEOC is *per se* invalid; instead "the reasonableness of the EEOC's delay" depends "on the EEOC's reason for the delay." *EEOC v. Autozone, Inc.*, 258 F. Supp.2d 822, 827 (W.D. Tenn. 2003). *See also EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1222 (D.Md. 1989). If the time period is lengthy, the Court should scrutinize carefully any justifications proffered by the EEOC. *See EEOC v. Jacksonville Shipyards*, 690 F. Supp. 995 (M.D. Fla. 1988).

To aid in the analysis, the Court will divide the time between Kurland's filing of a charge with the EEOC and the filing of the instant case into three distinct periods: (1) The Investigation; (2) The Conciliation Efforts; and (3) The EEOC's Deliberations to File Suit.

**1. The Investigation**

The initial investigation of this case—between Jeffrey Kurland's filing of charges on October 31, 2000, and LMGT's receipt of a Letter of Determination on or about April 24, 2002—lasted approximately 18 months. Christie Boyd, the EEOC investigator, maintained a case log during this period, which reveals regular activity in the investigation, with substantial steps taken about once a month. Certainly, delay will not be excused merely because the EEOC activity is continuous, if the nature and quality of that activity do not justify the delay. *See Peterson*, 702 F. Supp. at 1221. Boyd's investigation, however, required her to review voluminous documents submitted by LMGT, interview Kurland and two other employees fired during the RIF, coordinate interviews with busy managers in LMGT's employ, as well as make an on-site visit to LMGT's premises. Additionally, Boyd was forced to seek a subpoena for 29 personnel files that LMGT did

not willingly turn over, which caused a two month delay. Boyd also provided LMGT extensions for responding to requests for information, totaling three and one half months.

The EEOC's action was not only continuous, but also was productive toward the ultimate finding of discrimination. The delays that did exist, were, at least in part, due to LMGT's own actions.[8] Moreover, an investigation lasting one and one half years is relatively short compared to cases in which courts found an investigation to be unreasonably long. *See EEOC v. Dresser Indust., Inc.*, 668 F.2d 1199 (11th Cir. 1982) (holding 33 months between charge and completion of investigation, with a total of 5 years and eight months between the charge and complaint, was an inexcusable delay); *see also EEOC v. Liberty Loan Corporation*, 584 F.2d 853 (8th Cir. 1978) (finding two years and two months before determination was part of an inexcusable delay, particularly considering plaintiff offered no reason for the delay, and the investigation did not begin until 19 months after the filing of the charge).

Thus, the Court finds nothing to suggest that the EEOC did not diligently pursue the charge during the investigatory period.

**2. The Conciliation Efforts**

LMGT does not contend that the period of time devoted to conciliation efforts, standing alone, was unreasonable. As noted above, on April 24, 2002, the EEOC sent a Letter of Determination to LMGT. After some discussions regarding back pay, the EEOC sent a letter to LMGT's counsel on July 26, 2002, indicating that conciliation efforts had failed. During such a short period of time, it is self-evident that any delay was reasonable.

---

[8] Indeed, at the hearing on their motion, LMGT conceded that the investigatory period, in and of itself, did not involve an unreasonable delay.

**3. The EEOC's Deliberations to File Suit**

LMGT's laches argument necessarily centers on the period between the end of conciliation, and when the EEOC finally filed suit—a span of 30 months. Notwithstanding the EEOC's proffered reasons for the delay, the Court finds that the delay was unreasonable.

On or before September 30, 2002, the Baltimore Regional Attorney submitted a request for litigation to the Office of General Counsel. It was not until April 1, 2003—six months later—that the General Counsel submitted its litigation recommendation to the Commission. The EEOC does not really explain the cause for this delay; it only provides more details about the events that transpired during that time period. For instance, it took until January 24, 2003—almost four months—for the Office of General Counsel to draft a memorandum on whether to litigate, and then another six weeks to seek "input on whether any policy issues were raised by the proposed litigation." EEOC's Opposition ("Opp."), at 16.

The EEOC's delay became truly inexcusable after the Commission put the case in agenda status. On May 30, 2003, the Baltimore Regional Attorney was directed to conduct a further inquiry into the investigation, which was not completed until May 18, 2004. The EEOC asserts that this period "consisted generally of extensive conferring between the Assistant General Counsel and the Baltimore Trial Attorney, extensive conferring between the Trial Attorney and Kurland, the Trial Attorney's contacting of several witnesses, and a reassessment of the entire file in view of the additional inquiries made." Opp. at 17. In the Court's view, "extensive conferring" and "a reassessment," over the course of almost a year, do not qualify as concrete actions taken by the EEOC to move the case forward. Moreover, even after the delay in Baltimore, the Office of General Counsel did not authorize the filing of a lawsuit for another 7 months.

The Court is sympathetic to the EEOC, an overburdened agency, charged with the daunting task of ensuring that only meritorious suits are filed. Nonetheless, the EEOC does not have unfettered discretion to carry on lengthy investigations and deliberations without good reason. In the instant case, the Court cannot find that the EEOC's proffered reasons for the delay make that delay reasonable or excusable. Moreover, each month the EEOC did not apprise LMGT of its continuing interest in the case likely led LMGT to believe, with increasing certainty, that it had avoided litigation. *Compare EEOC v. Jacksonville Shipyards*, 690 F. Supp. 995, 1000 (M.D. Fla. 1988) (holding delay of six years and 10 months from initial charge was not unreasonable because the "EEOC has exhibited a continuing interest in the pursuit of the discrimination charges and *this interest was repeatedly communicated to defendant*") (emphasis added).

The Court, therefore, concludes that the delay in this case was a result of a lack of diligence.

**B. Prejudice**

Unfortunately for LMGT, the analysis does not stop there. In order to secure equitable relief, a defendant must also prove that it was prejudiced by the delay. *See Navy Federal Credit Union*, 424 F.3d at 409. Prejudice is demonstrated by a disadvantage in asserting or establishing a claimed right, or some other harm caused by detrimental reliance on the plaintiff's conduct. *See White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). "'Classic elements' of undue prejudice include unavailability of witnesses, changed personnel, and the loss of pertinent records." *Dresser Industries, Inc.*, 668 F.2d at 1203). A defendant, however, has to prove that any lost evidence would ultimately support its position. *See Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958 (4th Cir. 1971). Ultimately, the Court must determine "whether the defendant has been crippled in its ability to succeed on the merits at trial." *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F. Supp. 1213, 1222 (D. Md. 1989) ("*Peterson*").

**1. <u>Key Witnesses are No Longer Employed by LMGT</u>**

LMGT argues that it has suffered substantial prejudice because key witness are no longer in its employ. Specifically, because Lockheed sold the CMC Division to Telenor, at least two witnesses—Ed Bender and Jeff Irwin—have relocated out of state, and cannot be compelled to come to Maryland to testify.

Certainly, the mere fact that LMGT no longer employs certain witnesses does not, alone, establish prejudice. *See EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 84 (3rd Cir. 1984). LMGT must demonstrate that the witnesses are unavailable, and that their unavailability is a result of the EEOC's unreasonable delay. *See id.*; *see also Navy Federal Credit Union*, 424 F.3d at 409.

Even if the EEOC had moved greater dispatch, it is not likely that these witnesses would have still been in LMGT's employ by the time the EEOC brought suit; the sale of CMC was complete by January 2002. Moreover, LMGT has been able to depose nearly all the relevant witnesses, including supervisors, signatories of the evaluation forms used to determine who would be laid off, and even Ed Bender, one of the out-of-state witnesses, who recommended that three claimants be included in the RIF.[9] Not only were all the depositions videotaped, but nearly all of LMGT's former managers live in the area, and thus, can be required to appear for trial.[10]

**2. <u>Keith Regan, a Key Witness, Died Unexpectedly</u>**

LMGT next alleges that it has sustained substantial prejudice because Keith Regan ("Regan"), who died suddenly in April, 2005, was a key witness for the defense, in that he

---

[9] Jeff Irvin, Kurland's co-worker, has not been deposed, but LMGT has done little to suggest why Irvin's testimony would be crucial in light of the numerous other employees who have been deposed.

[10] Ed Bender is the exception, but as noted above, the defendant has the benefit of his videotaped deposition.

recommended who should be laid off in the RIF.[11]  Specifically, LMGT alleges that Regan would have been a critical witness for at least four of the claimants, including Jeffery Kurland, Klaus Neumann, Edward Slack and Robert Cedric Baxter.

Nevertheless, the prejudice, if any, due to Regan's death appears minimal.  LMGT claims it needs Regan's testimony to prove that Neumann and Slack volunteered to be part of the RIF, show that Kurland was not a respected employee, and confirm that Baxter's position was "not critical to the business."[12]  But LMGT itself cites numerous depositions which provide support for its arguments, in place of the testimony it believes Regan would have offered.  LMGT has a deposition from Regan's supervisor, Kathryn Holman, who ultimately made all the RIF decisions based on Regan's recommendations.  LMGT also has depositions from Neumann and Slack, and will have the opportunity to engage in a vigorous cross-examination of the claimants at trial.[13]  Considering the numerous depositions and documents that focus on the RIF process, Regan's testimony is hardly so critical as to make its absence crippling to LMGT's defense.

### 3. Fading of Memories and Loss of Documents

LMGT also argues that it has suffered substantial prejudice because "memories have faded and documents have been lost during the EEOC's delay."  A defendant claiming prejudice due to lost memory must prove the loss of memory was caused by a plaintiff's unreasonable delay.

---

[11] At the outset, the EEOC argues that LMGT had an absolute duty to preserve its testimony once it received prompt notice of the discrimination charge. *See Jacksonville Shipyards*, 690 F. Supp. at 1000 (holding that prompt notice is dispositive for the issue of prejudice).  The Court rejects this argument.  The record reflects that Regan's death was sudden, and only three months after the filing of the complaint.  LMGT's failure to depose him within three months of the filing of the complaint should not operate as a bar to its raising the defense of laches.

[12] The EEOC argues LMGT has not successfully proven that Regan would benefit its case.  *See Lorillard Corp.*, 448 F.2d at 958.  The Court, however, does not find this argument particularly compelling, because various persons suggest that Regan agreed with the RIF decisions.

[13] Baxter and Kurland did not fall under Regan's chain of command, so LMGT's need for testimony from Regan for those two employees does not appear to be critical.

*See Peterson*, 702 F. Supp. at 1222; *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 280 (7th Cir. 1980); *see also see also Navy Federal Credit Union*, 424 F.3d at 409.

In the instant case, the parties have taken 23 depositions; yet LMGT has only been able to identify one fact witness—Catherine Jost Melquist—whose memory is admittedly "faded."[14] Melquist, however, can hardly be labeled a key witness because she did not make the decision to include Kurland in the RIF.  Moreover, LMGT has produced no evidence to show that Melquist's memory would have been fresh one, two, or three years ago, but is not fresh today.  Therefore, LMGT cannot show that Melquist's faded memory was caused by the EEOC's inordinate delay. *See Navy Federal Credit Union*, 424 F.3d at 409.

LMGT's allegation that "documents have been lost" is even less compelling.  This type of bald allegation certainly cannot establish substantial prejudice sufficient to warrant equitable relief under the laches doctrine.[15]

**4. Increased Back Pay Liability**

The potential for increased back pay liability is arguably the most prejudicial aspect of the EEOC's delay.  The Court, however, need not address this issue at this juncture; a court may use its equitable power to "to locate a just result in light of the circumstances peculiar to the case" if the EEOC ultimately prevails on the merits. *See Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 373 (1977); *see also EEOC v. Am. Nat'l Bank*, 574 F.2d 1173, 1176 (4th Cir. 1978) (concluding that

---

[14] LMGT also points to the EEOC's investigator's fading memory.  Considering, however, that this case requires the Court to review the evidence *de novo*, any EEOC determination is immaterial.

[15] Moreover, once LMGT received notice of Kurland's filing of a EEOC charge, on or about November 2, 2000, LMGT had a duty to "preserve all personnel records relevant to the charge or action until final disposition of the charge or the action."  29 C.F.R. § 1602.14.

equitable relief for back pay claims should "best be considered after the facts have been fully developed, if the commission ultimately prevails").

In sum, while this Court concludes that the EEOC's delay in filing suit was unreasonable, LMGT has not been sufficiently prejudiced by that delay to warrant the sanction of dismissal of the action.[16] However, should the EEOC prevail on the merits, the Court reserves the discretion to reduce any excessive back pay liability attributable to the period of unreasonable delay.

## IV.

If the EEOC determines that an employer engaged in a discriminatory employment practice, it must attempt to achieve voluntary compliance "through informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b) (2000). Conciliation is one of the EEOC's most essential functions. *EEOC v. Radiator Specialty*, 610 F.2d 178, 183 (4th Cir. 1979). While it is a jurisdictional requirement to filing suit, "[t]he law requires . . . no more than a good faith attempt at conciliation." *Id*. In doing so, the EEOC must outline the basis for its determination of discrimination, offer an opportunity for voluntary compliance, and respond flexibly to the reasonable attitudes of the employer.[17] *See EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1259 (11th Cir. 2003). The fundamental question is whether the EEOC's conduct was reasonable and responsive "under all the circumstances." *Id*.

---

[16] The Court cannot ignore LMGT's pending motion for summary judgment on the merits, in support of which LMGT has submitted hundreds (if not thousands) of pages of legal argument and exhibits to the Court. Indeed, that herculean effort, standing alone, might be sufficient to show that LMGT has not been "crippled" by the EEOC's excessive delay.

[17] The Tenth Circuit has held that conciliation efforts are sufficient if the EEOC "makes a sincere and reasonable effort to negotiate by providing the defendant an adequate opportunity to respond to all charges and negotiate possible settlements." *See EEOC v. Prudential Fed. Sav. and Loan Ass'n*., 763 F.2d 1166, 1169 (10th Cir. 1985). This Court embraces the *Asplundh Tree* formula, articulated above, as have both parties.

**A. Conciliation of Jeffrey Kurland's Claim**

LMGT first claims that the EEOC did not in fact engage in "good faith" negotiations for conciliation in regards to Jeffrey Kurland, and therefore, seeks dismissal. Specifically, LMGT insists that the EEOC's request to reinstate Kurland was unreasonable because Lockheed has since sold CMC to Telenor, and thus, Kurland could not be reinstated to his prior position.

The EEOC's initial conciliation letter requested that Kurland be reinstated to a "position comparable to the position he held" before he was laid off; it did not insist that LMGT hire Kurland to work for a company that LMGT no longer owned. LMGT never objected to reinstatement in the short course of the conciliation discussions. Instead, LMGT rejected the EEOC's back pay calculations, and refused to enter into any Conciliation Agreement with Kurland, based on its wholesale rejection of the EEOC's determination of discrimination. When LMGT effectively cut off a good faith conciliation attempt, it cannot accuse the EEOC of not attempting to conciliate. *See Radiator Specialty*, 610 F.2d at 182. The Court concludes that the EEOC's conciliation efforts regarding Kurland were reasonable and responsive under all the circumstances. *See Asplundh*, 340 F.3d at 1259.

**B. Conciliation With Regard to Other Claimants**

LMGT finally argues that the EEOC did not make any conciliation efforts as to claimants other than Kurland, and therefore, urges the Court to dismiss those claims. The EEOC is not required to identify or negotiate in regard to each potential claimant in order to satisfy its duty of good faith attempts at conciliation. *See EEOC v. Rhone-Poulenc, Inc.*, 677 F. Supp. 264, 265-66 (D.N.J.1988) (finding that, although the parties only discussed the original claimant—and no other class members—at the conciliation conference, the EEOC fulfilled its duty to conciliate, as the potential for class action was mentioned in the Letter of Violation, and the investigation involved

a broader class-based search). The EEOC must only put a "defendant on notice that a class action may be brought." *See EEOC v. Hugin Sweda, Inc.*, 750 F. Supp. 165, 167 (D. N.J. 1990).

It is clear that conciliation discussions never involved a discussion of back pay for employees other than Kurland. The Court's analysis, however, does not end there. In its Letter of Determination, the EEOC concluded "that there is a reasonable cause to believe that [Kurland] and *a class of older workers* (age 40 and older) were selected for position abolishment and permanent layoff because of their age, in violation of the Age Discrimination in Employment Act[.]" MSJ, App. 3 (emphasis added). The letter further explained that the basis for the determination was that the evaluation criteria for determining who should be included in the RIF were not uniformly applied—which, at the very least, suggests that any suit could include persons beyond Kurland. Moreover, the EEOC's investigation went well beyond Kurland's termination; the EEOC subpoenaed personnel files of all other claimants during the initial investigation. Under the totality of the circumstances, the Court finds that the Letter of Determination and the scope of the investigation put LMGT on notice as to the possibility of a suit seeking relief for a class of persons.

Certainly, the EEOC could have made further attempts at conciliation. LMGT's final response, however, was not an attempt to negotiate specific terms of a Conciliation Agreement; rather, it challenged the very basis of the EEOC's allegations. In light of LMGT's blanket denial of liability in regard to Kurland, this Court finds that the EEOC made sufficient efforts to conciliate in good faith, and reasonably concluded that conciliation discussions on behalf of other class members would be a futile waste of resources.

**IV.**

For the reasons articulated above, the Court will deny LMGT's motion for summary judgment by separate order.


September 13, 2007                                /s/
Date                                             Roger W. Titus
                                                  United States District Judge